**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**CADENCE BANK**                                                                                         **Plaintiff**

**v.**                                                    **CIVIL ACTION NO.: 1:23-cv-00139-MPP-RP**

**GLOBALVISION SYSTEMS, INC.
and AI OASIS, INC.**                                                            **Defendants**

**ORDER**

      This cause comes before the court on its own motion, making some initial, and tentative, observations regarding the TRO motion filed by plaintiff Cadence Bank ("Cadence") in this case.

      This case involves a dispute between Cadence and defendants based upon what plaintiff characterizes as a bad faith scheme by defendants to use improper coercion to force it to pay far more than it had been paying to use business compliance software which is crucial to its banking business. As best this court can tell, it is undisputed by defendants that they chose to create a company – defendant AI Oasis ("AIO") - which is virtually identical to defendant Global Vision ("GV"), with whom plaintiff executed its software licensing agreement and which still holds the patents on the software at issue in this case. It further seems undisputed that AIO thereupon made a demand upon plaintiff that, to be able to continue to use the same business-crucial software which it had been using for ten years, it should pay AOI 6000% more than it had been paying GV. That is the sort of conduct which this court associates with businesses attempting a bad-faith shakedown scheme, and such conduct does not lend itself to sympathy towards defendants' legal positions in this case.

      Having said that, this court also has serious concerns with the manner in which plaintiff has prosecuted this action. In its motion for TRO, plaintiff sought for this court to grant it

1

injunctive relief without any notice to defendants and without mentioning two facts which this court regards as very important to any ruling in this case. The first fact is that defendants appear to have a good faith argument that they did, in fact, provide plaintiff with timely notice of their intent not to renew the license agreement in this case, although it is disputed whether this notice was provided in the form required by the agreement.[1] The second fact, nowhere mentioned in plaintiff's TRO motion, is that the same issues presently before this court are already being litigated in a California federal lawsuit filed against plaintiff by defendants. The first fact is buried on page ninety of one of plaintiff's exhibits in this case, [Exhibit K at 90], and this court only learned the second fact by contacting, on its own initiative, counsel for defendants.

In responding to this court's e-mails (with counsel for plaintiff cc:ed), counsel for defendants argued that it should apply the "first to file rule" and leave the resolution of these issues to the California court which is already considering them. Specifically, counsel for defendants argued that:

> [O]n behalf of defendants GlobalVision and AI Oasis, we believe there are compelling reasons not to enter any TRO at this point, both on the merits, and in light of the fact that there is a prior pending action in the U.S. District Court for the Central District of California (*GlobalVision, AI Oasis v Cadence Bank*, Case No. 2:23-cv-0875) involving substantially the same issues, and under the "first to file" rule "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 950 (5th Cir.1997).

[October 19 e-mail from defense counsel Paul Chan]. While this court makes no formal ruling at this juncture, it is presently inclined to agree with defendants that it should let the California

---

[1] GV's alleged "non-renewal" of the contract strikes this court, on first impression, as being rather disingenuous, since it seems clear that it is quite interested in continuing to allow Cadence to use its software, but at exorbitantly higher rates. It appears that GV may well have created AIO – owned by the same principals as GV – in order to allow it to accomplish this goal. This court frankly suspects that this is nothing more than a bad faith corporate shell game.

2

court already considering these matters take the lead in resolving the issues in this case. This court is so inclined based upon 1) the first to file rule itself, 2) the manner in which plaintiff has prosecuted its TRO motion[2] and 3) the e-mailed assurances from counsel for defendants that "in the interim period until the Court issues any ruling on the request for TRO, GlobalVision and AI Oasis will take not take any actions to terminate or otherwise interfere with Cadence Bank's access to its Patriot Officer software." [*Id.*]

This court believes that counsel for defendants' assurances remove much of the urgency referenced by plaintiff in its TRO motion, although it agrees with counsel for plaintiff that, to fully preserve the status quo, defendants should continue to provide the full range of support services which they had been providing during the ten years of the parties' business relationship. This court frankly believes that defendants would be well advised to provide such services not only out of the "goodness of their hearts" but also because their business practices referenced in the first paragraph are unlikely to earn them much sympathy from whichever court eventually decides these matters. This court accordingly believes that defendants should properly be engaged in "damage control" mode in this case and, ideally, seek to find an amicable resolution of it.

In light of the foregoing, this court is not presently inclined to grant plaintiff the TRO relief it seeks in its motion, in deference to the California action already considering these matters. However, this court does not rule out the possibility that it will eventually give plaintiff some form of TRO relief in this case, if defendants fail to protect the status quo while the

---

[2] In the court's view, it would set a bad precedent to allow a party already litigating an issue in one court to obtain emergency relief from another court with far less familiarity with the subject matter of the case. This is particularly true when, as here, the emergency relief is sought based upon a quite selective description of the facts and with no notice given to the other side.

California litigation is proceeding.  In order to obtain that relief, however, plaintiff will need to demonstrate why the California district court should not be the one to issue it.

  This, the 20th day of October, 2023.

               <u>/s/ Michael P. Mills</u>
               **UNITED STATES DISTRICT JUDGE**
               **NORTHERN DISTRICT OF MISSISSIPPI**